SANDOVALL *v.* ROIG.

## APPEAL from the District Court of Arecibo.

No. 138.—Decided May 6, 1908.

APPEAL—FAILURE TO PRESENT STATEMENT OF THE CASE.—Where a statement of a case or bill of exceptions is not presented and questions of fact are involved, such as whether or not fraud has been practiced in the execution of a contract the annullment of which is sought, this court cannot consider the evidence and, therefore, must affirm the judgment appealed from.

ID.—THE FACTS DECLARED TO HAVE BEEN PROVEN IN THE DECISION OF THE TRIAL COURT.—Even where the appellant is satisfied with the facts declared by the trial judge in his decision to have been proven, the question involved in the appeal is not reduced to a question of law because for this purpose it would be necessary that the adverse party should signify his conformity as to the findings of the trial court, and this is not here the case.

The facts are stated in the opinion.

*Mr. López Hernández* for appellant.

*Mr. Suliveres* for respondent.

MR. CHIEF JUSTICE QUIÑONES delivered the opinion of the court.

The decision of the trial court which contains the judgment, the subject of the appeal in this case, reads as follows:

"*Decision.*—This matter was tried on February 15 of the current year, and after the evidence had been heard and the briefs of the parties considered, the court arrived at the following conclusions:

"1. By deed executed on May 10, 1899, in San Juan, before Notary Mauricio Guerra, the defendant agreed to pay the plaintiff on March 30, 1905, 20,000 *pesos* provincial money, said sum earning interest at the rate of 6 per cent per annum, payable every three months in advance. The said sum represented the unpaid price of the assignment and sale by the plaintiff to the defendant of a mortgage credit constituted on an estate called Riachuelo y Pablito, situated in the *barrio* of Caonillasabajo, Utuado; of a rural estate situated in the district called Pandura of the same *barrio;* of another rural

estate, called Estancita, in the same *barrio;* and of an urban estate within the limits of the city of Utuado. All of them unencumbered, as stated by the vendor, Rosa Sandovall.

"2. The defendant did not pay either the 20,000 *pesos,* provincial money above referred to, or the interest agreed on, for which reason he entered into a contract of assignment in settlement with the plaintiff, embodied in a public deed executed before Notary Jacinto Texidor y Alcalá del Olmo, in San Juan, P. R., on July 8, 1903, by which the plaintiff received the estate of Riachuelo y Pablito (which had been acquired by the defendant, José Roig Colomer, by execution on the mortgage credit previously assigned him of which mention is made in the preceding paragraph), and the other rural and urban estates which had been the subject of the contract of the said 10th of May.

"3. In said contract of July 8, 1903, the party making the payment, José Roig Colomer, set forth in statement 10 thereof, that the estate of Riachuelo y Pablito, 'was at the present time subject to a cautionary notice entered in proceedings prosecuted against him by Jaime Colón, and that as an act exclusively personal to him was involved, he assumed all the liability to which such estate might become subject by reason of said litigation, especially binding himself to abide by the results of such liability, in order that no prejudice be thereby caused to Miss Sandovall Buscall.'

"4. In statement 11 of said contract, the debtor, José Roig Colomer said that 'he gives the estate described to Rosa Sandovall Buscall, in payment of the $12,000 which he owes her, assigning to her all his rights, without any reservation whatsoever,' and in the following clause—that is to say, in statement 12—Rosa Sandovall states that 'by virtue of such payment' she relieves Roig Colomer of the obligations contracted in the deed of May 10, 1899, giving him a receipt in full for the principal and all the interest agreed on and accruing to the date of the deed.

"6. In her complaint, Miss Sandovall alleges that at a very early age she had come under the guardianship of Roig Colomer, whom she considered a father, for which reason the contracts between them were executed at the pleasure and caprice of that gentleman; that having full confidence in him, she accepted what he told her and which appears in the deed, ignoring the fact that the court of San Juan had previously in the said proceedings brought by Jaime Colón made an order prohibiting the alienation of the real property and property rights belonging to the defendant, Roig; that the latter was acquainted with such prohibition, and, consequently, the contract of July 8, 1903, was fraudulent; that the plaintiff, on a number of occasions, had in vain asked the defendant to settle the matter, in view of the nullity of the contract; and that during the two years and seven months which had elapsed at the time the complaint was filed since the execution of the deed, she had suffered damages estimated at the sum of $3,500, for which the defendant is liable. She concluded by praying the court to set aside as null and void, the contract of assignment in settlement entered into between the defendant and the plaintiff, by deed executed before Notary Jacinto Texidor, on July 8, 1903, and, consequently that an order issue in favor of the plaintiff to the effect that upon her delivery of the property the subject of the void contract, she recover from the defendant the $12,000 representing the debt, with the stipulated interest of 6 per cent per annum, and in addition $3,500 for damages, and all the costs and expenses of these proceedings.

"7. The defendant denied generally and specifically all the facts alleged in the complaint, excepting the first, second, third and fourth, which refer to the stipulations of the contracts of May 10, 1899, and July 8, 1903; he alleged that Miss Sandovall had accepted the latter contract having full civil capacity and with full knowledge of the cautionary notice against the estate the subject of the assignment in payment; that Roig Colomer reserved to himself the liabilities which

might arise against the estate and that none had materialized as yet; that the proceedings in the District Court of San Juan, prosecuted by Jaime Colón against Roig Colomer, involved the rescission of a contract of partnership and an accounting. A prayer for a cautionary notice against the property of the defendant having been made in the complaint, and which the court granted by order of July 17, 1901, reads as follows: 'With reference to the fourth prayer, in view of the provisions of article 42 of the Mortgage Law, it is ordered that action be taken as prayed for;' that by virtue of this order, explained by another order of April 29, 1903, the cautionary notice referred to in statement 10 of the said deed of July 8, 1903, was entered; and he concluded with the prayer for the dismissal of the complaint, with the costs against the plaintiff.

"8. In order to decide this question, it becomes necessary clearly to establish the law applicable to the case, because in their briefs the parties have cited the act to secure the effectiveness of judgments, the Mortgage Law and the Civil Code.

"The Act to secure the effectiveness of judgments was approved March 1, 1902; therefore, it is not applicable to the order of the court of San Juan made in an action in 1901; for this reason in the consideration of this question the provisions of section 9 of said act must be disregarded.

"The order of the said court states that it is based on article 42 of the Mortgage Law, so that it becomes necessary to consider the scope and purpose of this judicial decision. The property against which a cautionary notice has been entered by virtue of the prohibition to alienate is answerable to Jaime Colón for the performance of the obligation secured, with preference over any other person who may have acquired a right subsequent to the notice, and, therefore, with preference over Rosa Sandoval. Roig Colomer could have sold or assigned in payment the property described in the deed of July 8, 1903, because article 71 of the Mortgage Law permits

him to do so, inasmuch as this law, properly called the law of third persons, had fulfilled its ends by reserving in a proper case the right of Jaime Colón (a third person having a right prior to the contract of July 8, 1893), by means of the notice ordered entered by the court. Therefore, the contract of July 8 is not void owing to the limitation on the ownership which, with reference to the person and rights of Jaime Colón, Roig Colomer had to dispose of his property, inasmuch as the law permits him to do so with such limitation.

"9. Now then, if for the settlement of the judicial relations arising by virtue of the cautionary notice and the acquisition of the property against which it was entered, the provisions of the Mortgage Law would have to be observed in deciding the conflicting rights of Jaime Colón and Rosa Sandoval, the rules of the common law must be applied in judging as to the validity or nullity of the contract of July 8 with respect to the contracting parties.

"10. There is no doubt of the fact that Rosa Sandoval executed the deed of July 1 with full legal capacity, as asserted by the defendant, but it has not been proved that, as he alleges, she accepted the contract with full knowledge of the cautionary notice then appearing and which still appears against the estate of Riachuelo y Pablito, and much less against the other rural and urban estates, which, in conjunction with it, priced not separately but as a whole, were assigned for the payment of the $12,000 due and the interest thereon.

"11. An examination of the evidence presented for the purpose of ascertaining whether fraud had been practiced in the contract of July 8, shows:

"(a) That according to a certificate introduced as evidence, issued by the registrar of property of this district, it appears that the prohibition to alienate with respect to the estate of Riachuelo y Pablito was recorded on July 17, 1903, so that when the contract was entered into on July 8, Rosa Sandoval naturally gave her consent trusting in the statements of Roig, as she had not been a party to the proceedings

in which the prohibition was ordered, and such prohibition not having been recorded in the registry, it is reasonable to assume that she did not and could not have had, through any cause, a thorough knowledge of such prohibition. This opinion is affirmed upon considering the inexact, vague, insidious form employed by Roig in statement 10 of said deed, which is sufficient to deceive any contracting party, even though not having the characteristic of complete personal trust arising from the previous relations of guardian and ward between the plaintiff and defendant. The deception is even more manifest if it be' considered that the other estates the subject of the contract—that is to say, the rural estates, one of them situated in the district called Pandura, and the other known by the name of Estancita, as well as the urban estate situated within the limits of the town of Utuado—were made the subject of a similar cautionary notice on April 23, 1903, relating to the express prohibition to alienate, and that Roig Colomer kept silence with reference to the existence of a record of the same liability against them which existed against the estate of Riachuelo y Pablito, so that by his silence he induced her to believe that they were unencumbered and avoided any desire on the part of Rosa Sandovall and precluded the possibility of her ascertaining, with full knowledge the state of such property, with reference to which, his full and unimpaired rights of ownership without any reservation whatsoever; a manifest deception, because his rights were not impaired, but limited by the right of Jaime Colón.

"(b) It is perfectly well understood that if Rosa Sandoval having sold to Roig Colomer the estates in question, according to the deed of May 10, 1899, unencumbered, for the sum of 20,000 *pesos,* provincial money, she would not have received them in payment of the same sum reduced to dollars and the interest thereon, after the effects of the last cyclone which swept this Island, if, in addition to their natural depreciation in value, she would not have acquired the free ownership thereof because it was limited by the rights of Jaime Colón.

"The consideration of the contract was for Rosa Sandovall, the recovery of the amount owed her, in order to be able to dispose thereof freely, if not in cash, then in real property, and the debtor by the form of expressing and concealing the legal status of the property, known only to the said Roig, induced her to enter into the contract, which she would not have done had she known of said status, as she did not attain her purpose in receiving said estates, which was that of recovering the $12,000 owed her and interest, without any limitation whatsoever. This fraud in the consideration vitiates the consent, because it is not possible to accept as legitimate those facts which an honest conscience rejects as immoral, and, consequently, it produces the nullity of the contract, in accordance with the provisions of section 1237 of the Civil Code in force.

"12. With respect to damages, the court takes into consideration that when money is involved, they are settled by the payment of the interest stipulated, and the record does not show the existence of any other derived from the fraudulent contract the subject of the complaint.

"Consequently, the court holds:

"That the contract in settlement of payment entered into between José Roig Colomer and Sosa Sandovall Buscall, by public deed executed in San Juan before Notary Jacinto Texidor Alcala del Olmo, on July 8, 1903, is null and void, and orders the plaintiff to deliver to the defendant, Roig Colomer, the property, the subject of said contract, and that she recover from the said defendant the $12,000, the amount of the debt set forth in the deed, plus interest at 6 per cent per annum from the date of its maturity, reckoned in accordance with the deed of May 10, 1899, to the date of the payment, and the costs of these proceedings. Arecibo, March 23, 1907."

The defendant, José Roig Colomer, took an appeal in due time from this judgment; and the copies of the records which his counsel considered sufficient for the prosecution of the appeal having been transmitted to this Supreme Court, it was

prosecuted, both parties filing their respective briefs and the hearing was had at which counsel for the parties made their respective arguments.

According to a certificate issued by the secretary of the District Court of Arecibo, introduced by the appellant and attached to the record by order of this Supreme Court, the judgment was entered by the secretary the day of its date; but no bill of exceptions or statement of facts has been submitted, and as a consequence the first question presented to the consideration of this court, is whether, neither of said documents having been submitted for the purpose of bringing before the Supreme Court the evidence heard at the trial, it may or may not enter upon a discussion of the appeal in question.

Counsel for the appellant in his brief and at the hearing argued in the affirmative, because he understands that as he agrees to the facts held to have been established by the judge of the trial court in his decision, the matter is reduced to a question of law, for the decision of which no bill of exceptions or statement of facts is necessary; but counsel for the respondent maintains the contrary, alleging that as the appeal is based on the insufficiency of the evidence to justify the judgment setting aside the contract because of fraud, this cannot be done without such evidence being submitted to the consideration of this Supreme Court in the authentic and trustworthy manner prescribed by law.

And in this matter the undersigned justice is of the opinion that counsel for the respondent is right.

The principal argument of the appellant to contest the judgment in this case, consists in that the acts which the judge of the trial court has held to have been established do not constitute a fraudulent consideration in the contract, he could not set aside the contract on that ground, based on mere presumptions of conjectures, which are not admissible when fraud is involved, which cannot be presumed, but which it is necesary to allege and prove.

The question at issue in this case is thus reduced to a determination of whether the fraudulent consideration in the contract which it is sought to set aside has or has not been proved; and in order to decide this question it is necessary that this court be in a position to review the evidence presented by the parties for which purpose the opinion which the judge of the lower court may have formed thereon is not sufficient, but it is necessary that the Supreme Court be able to consider it itself, and according to its own judgment, and for this purpose such evidence must be submitted to it in the proper and adequate manner prescribed by law.

Sections 214 and 215 of the Code of Civil Procedure establish the special form of submitting to the Supreme Court on appeal, the evidence heard in the lower court, and this manner of establishing or identifying the evidence, is none other than by means of a statement of facts prepared by the appellant and submitted to the judge for his approval, if proper, but with the intervention and hearing of the respondent, who make such amendments or additions thereto as he may consider in furtherance of his interests; such statement of facts cannot be supplied, as alleged by the appellant, with the findings of fact of the trial court upon the evidence heard at the trial.

The trial court confines itself to its decisions to setting forth its particular findings on the evidence or some of it, but as such findings may be incorrect or deficient, it would be a gross injustice to compel the adverse party to abide by the erroneous or deficient findings of the judge, thus depriving him of the right to establish their incorrectness, by identifying the evidence omitted or improperly weighed by the trial court, in order that the appellate court may review the judgment with a full and perfect knowledge of the facts.

It is therefore impossible to accept the theory of the appellant that agreeing as he does with the facts which the trial court declares to have been proved in its decision or opinion, the question at issue in the appeal should be considered as reduced to a question of law, which as such, may be decided

by the Supreme Court without the necessity of reviewing the evidence. For this it would be necessary for the other party to agree to the findings of the trial court with respect to the facts which it holds in its opinion to have been established; but as in the present case the respondent does not agree, this theory cannot be admitted here and this court cannot enter on a discussion of the justice or injustice of the judgment appealed from, on account of a lack of the elements necessary as required by law to establish herein the result of the evidence.

In view of these considerations, the undersigned justice is of the opinion that the judgment appealed from should be affirmed, with the costs against the appellant.

*Affirmed.*

Justices Hernández, Figueras, MacLeary and Wolf concurred.